UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
SHON WILLIAMS,

                    Plaintiff,                **MEMORANDUM AND ORDER**

      - against -               14-cv-5123 (NRB)

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, CITY POLICE
COMMISSIONER RAYMOND KELLY, in his
individual and official capacities,
and JOHN DOES ## 1-20, in their
individual capacities,

                   Defendants.
-------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## I. INTRODUCTION

Plaintiff was arrested on February 27, 2012, and indicted for attempted robbery, assault, and related charges. Over a year later, all charges were dismissed. In this section 1983 action, plaintiff alleges that officers of the New York City Police Department (NYPD) arrested him without probable cause, arrested him based on his race, used excessive force in effecting his arrest, and prosecuted him maliciously. Plaintiff alleges as well that each of these wrongs resulted from a policy or custom of the NYPD.

1

The City of New York (the "City"), the NYPD, and former NYPD Commissioner Raymond Kelly ("Kelly")[1] move to dismiss plaintiff's complaint on the grounds that plaintiff has failed to plead a municipal policy or custom, that plaintiff has failed to plead Kelly's personal participation in any such policy or custom, and that plaintiff has failed to plead certain elements of his claims for false arrest and malicious prosecution. We agree that plaintiff has failed to plead a municipal policy or custom, so that the municipal and official defendants may not be held liable on a federal constitutional theory. We also agree that plaintiff has failed to plead that any municipal employee initiated plaintiff's prosecution, so that no defendant may be held liable for malicious prosecution. We conclude, however, that plaintiff may proceed with his false arrest and excessive force claims against individual defendants, and also against the City on the

---

[1] As a division of the City of New York, the New York City Police Department is not a suable entity. See, e.g., Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007); N.Y.C. Charter § 396.

Kelly is not a proper party in his official capacity because he is not the Police Commissioner. Furthermore, Rule 25(d) of the Federal Rules of Civil Procedure does not automatically substitute Kelly's successor because Kelly was not Police Commissioner when plaintiff filed his complaint. See Compl. ¶ 2, July 9, 2014, ECF No. 1 (referring to Kelly as the "former New York City Police Commissioner"); J. David Goodman & Joseph Goldstein, Bratton Vows to Steer Police Away From Aggressive Tactics, N.Y. Times (N.Y. ed.), Jan. 2, 2014, at A14 (reporting the inauguration of Kelly's successor).

The complaint is therefore dismissed as to the New York City Police Department and as to Kelly in his official capacity. Alternatively, Kelly is dismissed in his official capacity because plaintiff does not seek injunctive or declaratory relief that could be directed to the Police Commissioner and because any such relief could be awarded against the City of New York.

surviving state-law causes of action on a respondeat superior theory.

## II. <u>FACTS</u>

### A. <u>Documents Considered</u>

In deciding a motion to dismiss for failure to state a claim, we consider the complaint (Compl., ECF No. 2), materials incorporated into the complaint by reference, materials integral to the complaint, and facts that are capable of judicial notice. <u>See</u> <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010).

Defendants ask us to consider certain police and court records along with the Complaint.[2]  Detective David Cruz's report of interviewing a complainant, an arrest record, the criminal complaint and indictment, and a deposition of plaintiff. According to defendants, these records demonstrate that NYPD officers had probable cause to arrest plaintiff.  These documents are unquestionably not "incorporated" into the Complaint because they are neither attached to the Complaint nor explicitly mentioned therein.  We may take judicial notice of the procedural history of plaintiff's criminal case, but not of the truth of the arresting officers' version of events.

---

[2] Specifically: a "DD5" form summarizing an NYPD detective's interview with plaintiff's alleged victim, an NYPD computerized record of plaintiff's arrest, a criminal complaint signed by the alleged victim, plaintiff's indictment, a temporary order of protection issued against plaintiff, and an excerpt of plaintiff's deposition.

In advocating these extraneous documents, defendants argue most strenuously that these documents are "integral" to the Complaint by describing the circumstances of the arrest that is the focus of plaintiff's claims. Defendants look for support to certain cases in which courts have considered similar police records at the pleading stage. See Betts v. Shearman, No. 12-cv-3195 (JPO), 2013 WL 311124, at *3, 2013 U.S. Dist. LEXIS 11139, at *10 (S.D.N.Y. Jan. 24, 2013) (considering incident report and accusatory instrument that "provide[d] crucial details" about the plaintiff's prosecution), aff'd on qualified immunity grounds, 751 F.3d 78 (2d Cir. 2014); cf. Obilo v. City Univ. of City of N.Y., Civil Action No. CV-01-5118 (DGT), 2003 WL 1809471, at *4, 2003 U.S. Dist. LEXIS 2886, at *14-15 (E.D.N.Y. Apr. 7, 2003) (considering incident report and police complaint that the plaintiff had conceded were "implicitly" incorporated into his conspiracy allegations).

The better view, adopted by a majority of courts in our Circuit, is that these kinds of police records are not "integral" to a false arrest complaint. See Bejaoui v. City of New York, No. 13-CV-5667 (NGG)(RML), 2015 WL 1529633, at *4-5, 2015 U.S. Dist. LEXIS 44087, at *14-16 (E.D.N.Y. Mar. 31, 2015) (noting disagreement and declining to consider extrinsic police reports); Alvarez v. Cty. of Orange, No. 13-cv-7301 (KMK), ___ F. Supp. 3d ___, ___, 2015 WL 1332347, at *8, 2015 U.S. Dist. LEXIS 37983, at

4

*20–23 (S.D.N.Y. Mar. 25, 2015) (collecting cases).  A document is not "integral" simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff <u>relied</u> on the document in preparing his complaint.  <u>See Global Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 156–57 (2d Cir. 2006); <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002).  Most typically, "the incorporated document is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint." <u>Global Networks Commc'ns</u>, 458 F.3d at 157.  "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  <u>Faulkner v. Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006).

Here, there is "no indication in the record that plaintiff relied on these documents in drafting the complaint."  <u>Allyn v. Rockland Cty.</u>, No. 12-cv-5022 (VB), 2013 WL 4038602, at *4, 2013 U.S. Dist. LEXIS 114947, at *12–13 (S.D.N.Y. July 30, 2013), <u>appeal docketed</u>, No. 15-1749 (2d Cir. May 29, 2015), ECF No. 1.  To the contrary, plaintiff relies on his own perceptions and recollections.  Furthermore, it is not beyond dispute that the police report is a truthful description of the police officers' basis to arrest plaintiff.  To accept the truth of the documents offered by defendants at this stage would amount to a premature

determination that the arresting officers are more credible than plaintiff.  To make such a determination at this stage would not be appropriate, and therefore we will not consider the facts adduced in plaintiff's police records.  We will, however, take judicial notice of the existence of the criminal complaint (executed by the alleged victim), the indictment, and the temporary order of protection.

B. **The Facts Alleged**

1. *The February 27 Incident*

Plaintiff alleges that, on February 27, 2012, he was eating lunch with friends in a Bronx park, when NYPD officers surrounded him, drew their guns, and shouted "Where's the gun?"  Compl. ¶¶ 19-20.  The police officers knocked a cell phone out of plaintiff's hand, tackled plaintiff to the ground, and searched plaintiff and plaintiff's backpack.  Id. ¶ 21.  One of the officers held plaintiff to the ground by pressing his knees against plaintiff's back and face.  Id.  At some point while under arrest, plaintiff overheard on a police radio that the police were looking for a "tall, black" person with a "blue hoody."  Pl. Dep. 24:6-12, Ex. E to Smith-Williams Decl., ECF No. 9.  Plaintiff acknowledges that his clothing fit this description.  Id.

Plaintiff was then taken to two precinct houses, was held overnight, and eventually learned that he had been arrested on suspicion of a robbery.  Compl. ¶¶ 25-26.  According to a complaint

sworn to by the alleged victim, plaintiff had struck the victim and had attempted to take the victim's wallet from his rear pocket. Crim. Compl., Ex. D to Smith-Williams Decl.   Plaintiff was arraigned and charged with a top count of attempted robbery. Compl. ¶ 27; Cert. of Indictment, Ex. F to Smith-Williams Decl. Plaintiff pled not guilty, and all charges were dismissed on December 6, 2013, over 21 months after plaintiff's arrest.   Compl. ¶¶ 27-28; Cert. of Disposition, Ex. C. to Deutsch Decl., ECF No. 11.

**2. *Municipal Policy or Custom***

Plaintiff's most specific allegation of a municipal policy or custom is as follows:

> Without probable cause as required under the Fourth Amendment, NYPD officers have been, and are engaged in rampant[] and unlawful arrests of individuals including Plaintiff.   The NYPD's widespread constitutional abuses have flourished as a result of, and are directly and proximately caused by, policies, practices and/or customs devised, implemented and enforced by the City and NYPD.   The City and NYPD have acted with deliberate indifference to the constitutional rights of those who would come into contact with NYPD officers by: (a) failing to properly screen, train, and supervise NYPD officers, (b) inadequately monitoring NYPD officers and their arrest practices, (c) failing to sufficiently discipline NYPD officers who engage in constitutional abuses, and (d) encouraging, sanctioning and failing to rectify the NYPD's unconstitutional practices.

Compl. ¶ 3; accord ¶¶ 2, 46.  Elsewhere in the Complaint, plaintiff repeats his allegation of "deliberate indifference on the part of policymakers . . . to the constitutional rights of persons within the City," ¶ 50, and identifies policies "of unconstitutional searches, seizures, and arrests," "of unconstitutionally using excessive force," and "of unconstitutionally maliciously prosecuting individuals."  ¶¶ 47-49.

Plaintiff further alleges that Kelly personally "devised, implemented, enforced, encouraged, and sanctioned" the accused "practices and/or customs," and that Kelly "failed to properly train, supervise and discipline officers employed by the NYPD." ¶¶ 53-54.

### 3. *Plaintiff's Claims*

Based on these facts, plaintiff asserts four factual theories, which intersect with three sources of law and four theories of liability.  The four factual theories are that the police arrested plaintiff without probable cause, that the police officers arrested plaintiff on the basis of his race, that the police officers used unreasonable force in effecting plaintiff's arrest, and that the police officers maliciously prosecuted plaintiff.  Plaintiff's causes of action arise from the federal Constitution and section 1983,[3] the New York State Constitution,[4]

---

[3] 42 U.S.C. § 1983 (2012).
[4] N.Y.S. Const. art. I, §§ 11, 12 (corresponding to the federal Constitution's Equal Protection Clause and Fourth Amendment).

and New York common law.   Plaintiff's theories of liability are
(1) that the arresting officers (sued as John Doe) are individually
liable for their own conduct, (2) that the City and NYPD are liable
under the doctrine of respondeat superior, (3) that the City and
NYPD are liable under <u>Monell</u>[5] for adopting or permitting a policy
or custom that caused plaintiff's injuries, and (4) that then-
Commissioner Kelly is liable for his participation in the NYPD's
policy or custom.

## III.   <u>DISCUSSION</u>

### A.   <u>General Legal Standards</u>

#### 1.   *Pleading Standards*

In considering a motion to dismiss for failure to state a
claim, we accept as true all factual allegations in the Complaint
and draw all reasonable inferences in the non-moving party's favor.
<u>Harris v. Mills</u>, 572 F.3d 66, 71 (2d Cir. 2009).   Nevertheless,
the "[f]actual allegations must be enough to raise a right of
relief above the speculative level."   <u>Bell Atl. Corp. v. Twombly</u>,
550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S.
662, 678 (2009).   If the plaintiff has "not nudged [his] claims
across the line from conceivable to plausible," the claims must be
dismissed.   <u>Twombly</u>, 550 U.S. at 570.   This pleading standard

---

[5] <u>Monell v. Dept. of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658 (1978).

applies to "all civil actions." Iqbal, 556 U.S. at 684 (internal quotation marks omitted).

### 2. *Elements of the Alleged Torts*

To state a claim for false arrest, whether under section 1983 or New York common law, a plaintiff must prove that the defendants intended to confine him, that the plaintiff was conscious of his confinement, that the plaintiff did not consent to the confinement, and that the confinement was not otherwise privileged. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992); Broughton v. State, 37 N.Y.2d 451, 456–57, 335 N.E.2d 310, 314 (1975). Lack of probable cause is not an essential element. Broughton, 37 N.Y.2d at 457; 335 N.E.2d at 314. Rather, a defendant may defend by proving that an arrest was authorized under state law. See N.Y. Crim. Proc. Law § 140.10(1)(b) (McKinney 2004) (providing that a police officer may arrest a person for a crime with "reasonable cause"); Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (Sotomayor, J.).

To state a claim for malicious prosecution, whether under section 1983 or New York common law, a plaintiff must prove that the defendant initiated or continued a criminal proceeding against the plaintiff, that the criminal proceeding terminated in the plaintiff's favor, that probable cause for commencing the proceeding did not exist, and that "actual malice" motivated the defendant's actions. Rothstein v. Carriere, 373 F.3d 275, 282 (2d

10

Cir. 2004); <u>Colon v. City of New York</u>, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250 (1983).

We do not discuss the elements of an excessive force or racial discrimination claim, because defendants do not argue that plaintiff has failed to plead these claims.

## B. **Probable Cause**

A police officer may have probable cause to arrest and charge a suspect based on information provided by a single victim or witness, "unless circumstances raise doubts as to the person's veracity." <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 70 (2d Cir. 2001); <u>see also</u> <u>Singer v. Fulton Cty. Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995); <u>Kramer v. City of New York</u>, 173 A.D.2d 155, 156, 569 N.Y.S.2d 67, 69 (1st Dep't 1991).

In the context of a malicious prosecution claim, but <u>not</u> in the context of a false arrest claim, probable cause is presumed if the defendant was indicted by a grand jury. <u>See</u> <u>Broughton</u>, 37 N.Y.2d at 455-56, 335 N.E.2d at 313. This presumption "is rebuttable only where the plaintiff establishes fraud, perjury or the misrepresentation or falsification of evidence." <u>Id</u>, 37 N.Y.2d at 456, 335 N.E.2d at 313.

Here, plaintiff's complaint denies that NYPD officers had any basis to arrest plaintiff. The defendants, of course, tell a different story. They assert either that the alleged robbery victim pointed out defendant individually or that defendant fit

the description of a tall, black male with a blue hoody.
Defendants appear to have some evidence to support both theories,[6]
and may well prevail at summary judgment or at trial if plaintiff
is unable to rebut defendants' evidence.

As to the malicious prosecution claim, the grand jury
indictment (see Ex. F to Smith-Williams Decl.) presumptively
establishes probable cause to prosecute, and plaintiff has not
pleaded any facts that suggest fraud, perjury, misrepresentation,
or falsification on the part of the arresting officers. Therefore,
we dismiss plaintiff's malicious prosecution claims for failure to
plead a lack of probable cause.

## C. Initiation

In the context of malicious prosecution, the plaintiff must
plead and prove "initiation" by showing that the defendant
"play[ed] an active role in the prosecution, such as giving advice
and encouragement or importuning the authorities to act."
Manganiello v. City of New York, 612 F.3d 149, 163 (2d Cir. 2010)
(quoting Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 217 (2d

---

[6] As to the "specific identification" theory, the DD5 form, which we do not rely
upon at this stage, states that the alleged victim "flagged down uniform[ed]
patrol and directed them to the males [i.e., defendant and another arrestee]."
Ex. A to Smith-Williams Decl., ECF No. 8.
    As to the "fit the description" theory, plaintiff stated in his deposition
testimony that he heard a general description of a tall, black male with a blue
hoody on the police radio, and that plaintiff fit this description. However,
plaintiff did not hear this description on the radio until after the police had
already knocked him to the ground, and so this radio communication, if it was
the first such communication, cannot establish probable cause for plaintiff's
initial seizure, regardless of whether the description was sufficiently
particular to support his continued detention.

Cir. 2000)). "One who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding," Rohman, 215 F.3d at 217 (quoting Present v. Avon Prods., Inc., 253 A.D.2d 183, 189, 687 N.Y.S.2d 330, 335 (1st Dep't 1999)), because a prosecutor presumably "exercises his own independent judgment in deciding whether to prosecute." Gilman v. Marsh & McLennan Cos., 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012) (internal citations omitted).

Here, it was the alleged victim, rather than police officers, who swore out the criminal complaint against plaintiff.[7] See Crim. Compl., Ex. D to Smith-Williams Decl.  Because there is no allegation that the police did anything more than to refer a criminal complaint to the Bronx County District Attorney, we dismiss plaintiff's malicious prosecution claims for failure to plead the initiation element against any City employee.

## D. Municipal and Supervisory Liability

Plaintiff advances three theories of derivative liability. First, that the City is strictly liable for its officers' torts according to the doctrine of respondeat superior; second, that a policy or custom of the City caused plaintiff's injuries; and third, that Commissioner Kelly is personally responsible for the

---

[7] This complainant is not named as a defendant, and the statute of limitations for malicious prosecution has expired.  See N.Y. C.P.L.R. 215(3) (Consol. 2008).

City's unconstitutional policy or custom.  We reject the first theory in part, and last two theories in full.

### 1. *Respondeat Superior*

It is well settled (and plaintiff does not appear to dispute) that "a municipality cannot be held liable" for a federal constitutional violation "solely because it employs a tortfeasor." Monell v. Dept. of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978).  "[I]n other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Id.

The City can, however, be liable on a respondeat superior theory with respect to claims arising from state law, including the New York State Constitution and common law.  See Brown v. State, 89 N.Y.2d 172, 194–95, 674 N.E.2d 1129, 1142–43 (1996) (recognizing respondeat superior liability when a private right of action exists under the State Constitution[8]); Sankar v. City of New York, 867 F. Supp. 2d 297, 313 (E.D.N.Y. 2012); Chimurenga v. City of New York, 45 F. Supp. 2d 337, 344 (S.D.N.Y. 1999). Therefore, to the extent that plaintiff adequately pleads a state-law claim against the individual arresting officers, plaintiff also pleads a state-law claim against the City.

---

[8] We do express no view as to whether it is appropriate to allow a private action under the State Constitution in this case, given the possibility that plaintiff can find an adequate remedy in section 1983 and the common law.  See Martinez v. City of Schenectady, 97 N.Y.2d 78, 83, 761 N.E.2d 560, 563–64 (2001).

### 2. *Monell Liability*

#### a. Legal Standards

To proceed with a section 1983 claim against the City, plaintiff must sufficiently plead that the City has a policy or custom of falsely arresting, using excessive force against, and maliciously prosecuting individuals. See Monell, 436 U.S. at 694. The accused practice "need not be contained in an explicitly adopted rule or regulation." Sorlucco v. N.Y.C. Police Dept., 971 F.2d 864, 870 (2d Cir. 1992). Plaintiff may instead allege that a practice is "so permanent and well settled as to constitute a custom or usage with the force of law." Id. (quoting Monell, 436 U.S. at 691). The failure to train municipal employees may constitute an actionable policy, but only when a plaintiff can "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting City of Canton v. Harris, 489 U.S. 378, 391 (1989)).

In support of his pleading, plaintiff points to a series of cases sustaining conclusory Monell allegations at the pleading stage. Each of these cases predates one or both of Twombly and Iqbal, and thus carries minimal precedential value. See Ambrose v. City of New York, 623 F. Supp. 2d 454, 478–79 (S.D.N.Y. Mar.

31, 2009) (relying on a now-abrogated characterization of <u>Twombly</u> from <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157–58 (2d Cir. 2007), <u>rev'd</u> <u>sub nom.</u> <u>Ashcroft v. Iqbal</u>); <u>Hall v. Marshall</u>, 479 F. Supp. 2d 304, 316 (E.D.N.Y. Mar. 6, 2007); <u>Nesbitt v. Cty. of Nassau</u>, No. 05 CV 5513 JG, 2006 WL 3511377, at *4, 2006 U.S. Dist. LEXIS 88262, at *14–16 (E.D.N.Y. Dec. 6, 2006); <u>Jean-Laurent v. Wilkerson</u>, 438 F. Supp. 2d 318, 325 (S.D.N.Y. 2006), <u>aff'd</u>, 461 F. App'x 18, 20–22 (2d Cir. 2012); <u>Locicero v. O'Connell</u>, 419 F. Supp. 2d 521, 525–26 (S.D.N.Y. 2006); <u>Fox v. City of New York</u>, No. 03-cv-2268 (FM), 2004 WL 856299, at *14, 2004 U.S. Dist. LEXIS 6844, at *44–46 (S.D.N.Y. Apr. 20, 2004).

"It is questionable whether the boilerplate <u>Monell</u> claim often included in . . . § 1983 cases . . . was ever sufficient to state a claim upon which relief could be granted.  In light of <u>Ashcroft v. Iqbal</u> and <u>Bell Atlantic Corp. v. Twombly</u>, it is now clear that such boilerplate claims do not rise to the level of plausibility." <u>Santiago v. City of New York</u>, No. 09 CIV 0856(BMC), 2009 WL 2734667, at *3, 2009 U.S. Dist. LEXIS 75372, at *7 (E.D.N.Y. Aug. 18, 2009).  For this reason, district courts in this Circuit have, since <u>Iqbal</u>, routinely dismissed generalized complaints of "policies," "customs," "failure to train," and "deliberate indifference." <u>See, e.g.</u>, <u>Plair v. City of New York</u>, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (dismissing allegation that City "permitted, tolerated and was deliberately indifferent

to a pattern and practice of staff brutality and retaliation by [corrections] staff"); Harper v. City of New York, No. 09-CV-05571 (JG)(SMG), 2010 WL 4788016, 2010 U.S. Dist. LEXIS 122184 (E.D.N.Y. Nov. 17, 2010) (dismissing Monell claim founded on allegations of repeated conduct against plaintiff), aff'd, 424 F. App'x 36 (2d Cir. 2011); Abreu v. City of New York, 657 F. Supp. 2d 357, 360–61 (E.D.N.Y. 2009) (dismissing Monell claims when complaint's "sparse facts" "outline[d] a single, detached incident of misconduct by a few non-policy level officers");

We agree with our colleagues, who have consistently held boilerplate allegations such as the ones in this case to be inadequate. The Complaint assures us that some policy or custom drives officers to arrest falsely, to apply excessive force, and to prosecute maliciously, but utterly fails to identify any specific policy or custom. Likewise, the Complaint mentions the ideas of deliberate indifference and failure to train, but fails to identify any widespread pattern of conduct to which the City blinded itself or any deficiency in the City's oversight and training.

At bottom, the Complaint alleges that, at one particular place and time, NYPD officers used excessive force in falsely arresting one criminal suspect. Seasoning an allegation of one-off conduct with catchphrases from leading Supreme Court cases is not

sufficient to state a <u>Monell</u> claim.    Therefore, we dismiss the section 1983 against the City.

### 3. *Supervisory Liability*

The Supreme Court has held that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 677.    Personal liability can result from direct participation in a constitutional violation, failing to remedy a constitutional wrong after being informed, creation or continuation of an unconstitutional policy or custom, gross negligence in failing to supervise subordinates, or deliberate indifference to indications of unconstitutional activity. <u>See</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995); <u>see also</u> <u>Turkmen v. Hasty</u>, Nos. 13-981, -999, -1002, -1003, -1662, ___ F.3d ___, ___, 2015 WL 3756331, at *24, 2015 U.S. App. LEXIS 10160, at *77-78 (explaining the consistency of <u>Colon</u> with <u>Iqbal</u>).

As discussed above, plaintiff has failed to plausibly allege the existence of an unconstitutional NYPD policy or custom. <u>A fortiori</u>, plaintiff has failed to plead that Kelly created or continued any such policy.    Along the same lines, plaintiff has failed to plead any manner in which Kelly failed to train NYPD officers.    Accordingly, we dismiss the claims against Kelly in his individual capacity in their entirety.[9]

---

[9] The claims against Kelly in his official capacity are also dismissed. <u>See</u> <u>supra</u> at note 1.

## IV. <u>CONCLUSION</u>

The motion to dismiss (ECF No. 7) is granted in part and denied in part, with the following claims dismissed:

- All claims sounding in malicious prosecution are dismissed for failure to plead initiation or lack of probable cause.

- All federal constitutional claims against the City are dismissed for failure to plead a policy or custom.

- All claims against Kelly in his individual capacity are dismissed for failure to plead Kelly's personal involvement.

- All claims against Kelly in his official capacity are dismissed because Kelly was not the Police Commissioner on the date of the Complaint, because plaintiff does not seek injunctive relief, and because any official claim against the current Commissioner would be redundant of a similar claim against the City.

- All claims against the NYPD are dismissed because the NYPD is not a suable entity.

The surviving claims are the section 1983 claims of false arrest and excessive force (against the individual arresting officers only) and the New York State constitutional claims (against the individual arresting officers and the City), although

we are skeptical that the false arrest claims have merit.  If, in fact, the complainant pointed plaintiff out individually to police before plaintiff's arrest, then it will be difficult for plaintiff to overcome the defense of probable cause.[10]

The parties shall confer and propose a schedule for limited discovery regarding the identities of the John Doe defendants.  If no individual defendant can be identified, then we will dismiss the section 1983 claims and decline to exercise supplemental jurisdiction over the New York State constitutional claims.

**IT IS SO ORDERED.**

Dated:      New York, New York
            July 21 , 2015

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[10] No common law claim survives.  The malicious prosecution claim is dismissed, and plaintiff has not alleged the torts of false imprisonment and battery, perhaps because the relevant statute of limitations expired in early 2013.  See N.Y. C.P.L.R. 215(3) (establishing a one-year limitations period running from the date of accrual).

Copies of this Memorandum and Order have been mailed on this date
to the following:

***Counsel for Plaintiff:***
Adam E. Deutsch, Esq.
Morelli Alters Ratner LLP
777 Third Avenue, 31st Floor
New York, NY 10122

***Counsel for Defendant:***
Qiana Smith-Williams, Esq.
Office of the Corporation Counsel
City of New York
100 Church Street
New York, NY 10007